MADDOX, Justice.
On November 14, 1984, petitioner Foon Yu Yeung was convicted in the Circuit Court of Montgomery County on two counts of robbery in the first degree and was sentenced to twenty years’ imprisonment on each count, with five years of the sentence on Count Two to run consecutively to the sentence on Count One, and with fifteen years of the sentence on Count Two to run concurrently with the sentence on Count One.
The Court of Criminal Appeals affirmed both convictions, without opinion, on August 20, 1985, 479 So.2d 89. On October 8, 1985, the Court of Criminal Appeals denied Yeung’s motion for rehearing and also denied his motion for a finding of additional facts pursuant to Rule 39(k), Ala.R.App.P. In his Rule 39(k) motion, Yeung asserted that evidence in the record establishes the following facts:
“Circuit Court Case No. 84-1000
“a. Foon Yu Yeung was charged with the robbery of [Meing] Chiep [Lao], owner of the Bamboo Garden, and this robbery occurred on November 18, 1983, around 11:00 P.M. in Montgomery County.
“b. Officer J.T. Marshall and his partner, W.C. Martin, were on patrol on the night of November 18, 1983, and saw a small white car with Georgia [license] plates occupied by three Oriental males. The officers stopped the car and questioned the driver and released him. This happened around 11:30 P.M.
“c. The police officers received a call to be on the lookout for three Oriental males who were suspects in a robbery about ten minutes after the release of the subjects.
“d. The police officer, J.T. Marshall, admitted upon cross-examination, that he stopped the car purely on suspicion and without probable cause.
“e. The defendant moved to strike this testimony and requested the court to give an instruction to the jury to disregard this testimony.
“f. The trial judge denied this defense motion which resulted in prejudice to the defendant.
“Circuit Court Case No. 84-1001
“a. Foon Yu Yeung was charged with the robbery of the Mandarin Restaurant *1108 in Montgomery, Alabama, which occurred on November 5, 1983, around 11:50 P.M.
“b. Mr. John Lo and Mr. Roger Fan were both leaving the restaurant when they were met by three Oriental males who spoke in Mandarin.
“c. The defendant was identified only by Mr. Fan.
“Facts Pertaining to both Cases
“a. The trial judge enhanced the punishment from ten years to life to twenty years to life upon motion made by the state over objection by the defendant.
“b. The district attorney made this motion after the defendant had been sentenced.”
Yeung has included this statement of “additional” facts with his certiorari petition. See Rule 39(k), Ala.R.App.P.
I
Yeung first contends that Officer Marshall should not have been allowed to testify that he and his partner stopped and questioned Yeung in Montgomery on November 18, 1983, the date of the robbery of Meing Chiep Lao because, as Yeung asserts in his Rule 39(k) motion, the officers had no reason other than suspicion for stopping Yeung’s automobile and questioning him.
Pursuant to Rule 39(k), we will consider facts submitted in a 39(k) motion only if they are found to be correct. See, commentary to Rule 39(k), Ala.R.App.P. This requires that we examine the record for evidence to justify the petitioner’s proposed statement of facts.
In this case, Officer Marshall’s testimony clearly reveals that he and his partner decided to stop Yeung’s car because a similar car, white, with Georgia plates, was thought to have been involved in robberies of several Chinese restaurants in Montgomery that occurred prior to November 18. The trial judge specifically stated that this testimony was the reason he would allow Officer Marshall to testify regarding Yeung’s presence in Montgomery on the date of the robbery. Thus, we must consider the trial court’s action in light of these facts, rather than those Yeung presents in his Rule 39(k) motion.[1]
Specifically, Yeung’s first contention is that the fourth amendment to the United States Constitution prohibits Officer Marshall from testifying because Yeung was “seized” by the officers without justification. If Yeung is correct, then clearly the proscriptions of the fourth amendment would apply because that amendment applies “to all seizures of the person, including seizures that involve only a brief detention short of arrest.” United States v. Brignoni-Ponce, 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975). This includes brief authoritative detentions of vehicles and occupants for questioning, even if no search of the vehicle is conducted. See, id., at 878, 95 S.Ct. at 2578; United States v. Martinez-Fuerte, 428 U.S. 543, 556, 96 S.Ct. 3074, 3082, 49 L.Ed.2d 1116 (1976).
*1109 In Delaware v. Prouse, 440 U.S. 648, 661, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660 (1979), the United States Supreme Court discussed the constitutionality of discretionary spot checks as follows:
“The marginal contribution to roadway safety possibly resulting from a system of spot checks cannot justify subjecting every occupant of every vehicle on the roads to a seizure — limited in magnitude compared to other intrusions but nonetheless constitutionally cognizable — at the unbridled discretion of law enforcement officials. To insist neither upon an appropriate factual basis for suspicion directed at a particular automobile nor upon some other substantial and objective standard or rule to govern the exercise of discretion ‘would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches.... ’ Terry v. Ohio, 392 U.S. [1], 22 [88 S.Ct. 1868, 1880, 20 L.Ed.2d 889] [(1968)]. By hypothesis, stopping apparently safe drivers is necessary only because the danger presented by some drivers is not observable at the time of the stop. When there is not probable cause to believe that a driver is violating any one of the multitude of applicable traffic and equipment regulations — or other articulable basis amounting to reasonable suspicion that the driver is unlicensed or his vehicle unregistered — we cannot conceive of any legitimate basis upon which a patrolman could decide that stopping a particular driver for a spot check would be more productive than stopping any other driver. This kind of standardless and unconstrained discretion is the evil the Court has discerned when in previous cases it has insisted that the discretion of the official in the field be circumscribed, at least to some extent. Almeida-Sanchez v. United States, 413 U.S. 266, 270 [93 S.Ct. 2535, 2538, 37 L.Ed.2d 596] (1973); Camara v. Municipal Court [of the City and County of San Francisco], 387 U.S. [523], 532-533 [87 S.Ct. 1727, 1732-1733, 18 L.Ed.2d 930] [(1967)].”
Thus, as Yeung asserts, mere suspicion that a driver might be violating a law, without any basis in fact, would not present sufficient justification to warrant an officer’s stopping a vehicle. The United States Supreme Court states the standard required to justify stopping a vehicle as follows:
“Accordingly, we hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver’s license and the registration of the automobile are unreasonable under the Fourth Amendment.”
Delaware v. Prouse, 440 U.S. at 663, 99 S.Ct. at 1401.
So, while mere suspicion, without more, is not sufficient justification for stopping a vehicle, if the officer can point to independent facts which lead to his “ar-ticulable and reasonable” suspicion that the vehicle is unregistered or that its occupants have violated some law, then stopping the vehicle would be justified under the fourth amendment.
This standard was taken directly from the Court’s earlier holding in Terry v. Ohio, supra. There, an officer on patrol observed three persons he suspected were “casing” a store prior to robbing it. Based on his observations, the officer stopped the three men and frisked them, discovering concealed weapons on two of them. At trial, defense counsel sought to have the searches excluded from evidence as unconstitutional because they were conducted without probable cause. The Supreme Court in Terry held that probable cause to search was not required under the circumstances presented, and adopted the “articu-lable and reasonable suspicion” standard, which was extended to warrantless seizures of automobiles in Delaware v. Prouse.
*1110 We are of the opinion that a sufficient factual basis existed in this case to support the trial court’s finding that Officers Marshall and Martin had sufficient reasons for stopping Yeung’s car and questioning him. Their suspicions were “articu-lable and reasonable” because of the prior robberies and the belief that a car similar to Yeung’s was involved; therefore, the trial court did not err in permitting Officer Marshall to testify that Yeung was in Montgomery on November 18, 1983.
II
Yeung next contends that, because use of a deadly weapon is a necessary element of the crime of first degree robbery, Code 1975, § 13A-8-41, the trial court erred in enhancing his sentence pursuant to Code 1975, § 13A-5-6(a)(4), which requires that anyone who commits, or attempts to commit, a Class A felony while using a firearm or deadly weapon be sentenced to at least 20 years’ imprisonment. We disagree.
The evidence in the record reveals that Yeung was convicted of two counts of first degree robbery, and that he used a pistol to commit these crimes. The trial court sentenced Yeung to 20 years for each count, the minimum sentence required by § 13A-5-6(a)(4). Thus, the trial court properly sentenced Yeung within the range of punishment set by the legislature.
III
Finally, Yeung contends that the trial judge erred by setting aside the original sentence he imposed and resentencing Yeung to a more severe sentence pursuant to a motion by the State. Yeung points out that Brown v. State, 376 So.2d 1382 (Ala.Crim.App.1979), prohibits a trial judge from resentencing a defendant once a valid sentence has been imposed, formal allocution has been conducted, and judgment of conviction and sentence has been entered in the record; however, because the record reveals that Yeung’s attorney failed to object to the resentencing, we cannot address this issue. It is well settled that this Court will not address the merits of an argument which is presented for the first time on appeal. Chatman v. City of Prichard, 431 So.2d 532 (Ala.1983); Green v. Taylor, 437 So.2d 1259 (Ala.1983).
In his Rule 39(k) motion, Yeung contends that he did object to the sentence. However, the record is clear that his objection was based on the grounds addressed in section II of this opinion, that is, that the sentence was improperly enhanced, not that it was error to set aside the original sentence. Because the trial court was not given an opportunity to consider the ground asserted by Yeung that is presented here, we decline to address it. Irwin v. State, 281 Ala. 163, 200 So.2d 465 (1967).
Even if we found that the trial court erred in resentencing Yeung, which we decline to do, we would be constrained to find that the error was harmless. See, Rule 45, Ala.R.App.P.; Favors v. State, 437 So.2d 1358 (Ala.Crim.App.), aff’d, 437 So.2d 1370 (Ala.1983). The record shows that immediately after the trial judge pronounced the first sentence, the prosecutor pointed out to him that § 13A-5-6(a)(4) required that Yeung be sentenced to at least 20 years on each count. The trial judge was authorized to find that Yeung had in no way relied upon the first sentence. He did not begin serving time, nor did he take any other action which could be construed as reliance. In fact, the trial court was authorized to find that the entire transaction occurred much too quickly for Yeung to have relied in any objective sense upon the sentence.
In addition, the trial judge originally sentenced Yeung to 10 years on count one and to 15 years on count two, with the sentences to run consecutively. Thus, Yeung was sentenced effectively to a total of 25 years on the two counts. As indicated above, Yeung’s total sentence now is that he must serve a total of 25 years. Therefore, any error committed by the trial judge on this aspect of the case was clearly harmless.
*1111 The judgment of the Court of Criminal Appeals is due to be, and it hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and ADAMS, JJ., concur.

. Officer Marshall testified as follows:
"Q. All right, will you tell the jury the circumstances under which you stopped that vehicle?
"A. Previous to that night, the previous few weeks to that there had been several robberies in the Montgomery area of Chinese oriental type restaurants. And we had gotten a look in a small white car possibly with Georgia plates. And we observed a white car with three oriental males in it at McGehee and the by-pass and we decided to follow them and stop them and talk to them and see what they were doing.”
Defense counsel objected to Officer Marshall’s testimony.
After a hearing conducted out of the jury’s presence, the trial judge ruled as follows:
"THE COURT: Let me state what I understand the law is: Random stopping is illegal. Okay. You have to have some suspicion of some unlawful activity or you have to stop them for some traffic violation. Based on the fact that he said there had been several robberies of Chinese restaurants with three oriental males in a white car with Georgia license plates and they stopped them to see whether or not they lived here and where it was. I overrule your objection on that ground."